**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| EDDIE LEE STRINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:08-CV-567 |
| ) | |
| INDIANA DEPARTMENT OF ) | |
| CORRECTION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### AMENDED OPINION AND ORDER[1]

This matter is before the Court on the Defendants' motion for summary judgment. For the reasons set forth below, the Court **GRANTS** the Defendants' motion for summary judgment on the Plaintiff's federal law claims, and **REMANDS** the complaint to the LaPorte Superior Court for consideration of the Plaintiff's state law claims.

BACKGROUND

While he was confined as a prisoner at the Indiana State Prison ("ISP"), Plaintiff Eddie Stringer filed a complaint and an amended complaint in the LaPorte Circuit Court alleging that the Indiana Department of Correction ("IDOC"), IDOC officials,

---

[1]This Amended Opinion and Order is being issued to correct a typographical error in the conclusion; namely, replacing the phrase "Plaintiff's motion for summary judgment on his federal law claims" with "Defendants' motion for summary judgment on Plaintiff's federal law claims."

Correctional Medical Services ("CMS"), and CMS employees denied him adequate treatment for a hernia. Stringer filed his amended complaint pursuant to Indiana Code § 34-13-3-1 *et seq.,* but in the body of his amended complaint he presented a lengthy analysis of his claim under the standards of the United States Constitution's Eighth Amendment, establishing that he intended to pursue federal law claims as well as his state tort law remedy. The Defendants removed the amended complaint to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

This Court screened the amended complaint pursuant to 28 U.S.C. § 1915A, granted the Plaintiff leave to proceed against Defendants Debbie Abram, Dr. Michael Mitcheff, M.D., Dr. Gerald Myers, M.D., and Nurse Nicole Holloway in their personal capacities for damages, and in their official capacities for injunctive relief, on his Eighth Amendment denial of medical treatment for a serious medical need claim and for damages on his supplemental state law claim. (DE 12). This Court dismissed all other Defendants and claims.

On January 23, 2009, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), this court dismissed defendant Abram because Stringer did not allege that she was personally involved in his medical care; his only claim against her dealt with how she handled his grievances. (DE 25). On September 16, 2009, after Stringer had been released from custody, the Court *sua sponte* dismissed his

claims for injunctive relief as moot. (DE 85). This case remains before this Court on the Plaintiff's damage claims against Dr. Mitcheff, Dr. Myers, and Nurse Holloway.

DISCUSSION

In his amended complaint, Stringer states that:

> This is a Tort Complaint filed against Defendants in their official capacity for their negligence in failing to provide timely and proper medical care for a groin hernia. Plaintiff seeks compensatory and punitive damages for his pain and suffering, and for the physical injuries that Plaintiff has suffered from the failure of prison officials to timely repair the groin hernia.

DE 2 at 3.

Stringer alleged in his amended complaint that beginning in April 2008, he began to suffer from a serious groin hernia, "causing continuous severe pain with every step or with any physical motion." (DE 2 at 3). He asserts that Nurse Holloway "harassed and embarrassed Plaintiff while responding to Plaintiff's health care requests at the prison hospital," (DE 2 at 4), that Dr. Myers "failed to provide access to medical specialists for the treatment of an enlarged and painful groin hernia, and that Doctor Michael Mitcheff has continuously denied all specialist referrals for the correction of Plaintiff's groin hernia." (DE 2 at 5).

EIGHTH AMENDMENT CLAIMS

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively,

3

whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir.1996) (*cert. denied,* 519 U.S. 1126 (1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). In medical cases, the Eighth Amendment test is expressed in terms of whether the Defendant was deliberately indifferent to the Plaintiff's serious medical needs. *Williams v. Liefer*, 491 F.3d 710, 714 (7th Cir. 2007); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" for Eighth Amendment purposes if it is either one that a physician has diagnosed as mandating treatment, or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary pain, and that significantly affects the person's daily activities or features chronic and substantial pain. *Gutierrez,* 111 F.3d at 1373.

The *Farmer* test contains an objective prong (whether there is a serious medical need), and a subjective prong (whether the

defendants were deliberately indifferent to that need). The Defendants "assume only for the sake of argument of this motion that Stringer's hernia could be a serious medical condition." (DE 48 at 13). Thus the question before this Court is whether Stringer meets the subjective prong of the *Farmer* test.

Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992) (Citations omitted). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Medical malpractice, negligence, or even gross negligence do not constitute deliberate indifference, nor does dissatisfaction or disagreement with a course of treatment prescribed by a doctor. *Johnson v. Doughty*, 433 F.3d. 1001, 1013 (7th Cir. 2006); *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002); *Dunnigan v. Winnebago County*, 165 F.3d 587, 592 (7th Cir. 1999); *Goka v. Bobbit*, 862 F.2d 646, 650 (7th Cir. 1988). Mere differences of opinion among medical professionals regarding a patient's appropriate treatment do not give rise to deliberate indifference. *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).

> For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.
>
> * * *
>
> Jackson was incorrect in his recitation of Williams's duty – medical professionals are not required to provide "proper" medical treatment to prisoners, but rather they must provide medical treatment that reflects "professional judgment, practice, or standards." There is not one "proper" way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Jackson v. Kotter*, 541 F.3d 688, 697-8 (7th Cir. 2008) (quotation marks and citations omitted).

In support of their motion for summary judgment, the Defendants submit their own affidavits, the affidavit of Dr. Marcel Rohana, M.D., a letter from Dr. Keith D. Lillemoe, Professor and Chairman of the Indiana University of Surgery, and 119 pages from Stringer's medical records. In response, Stringer submits his own affidavit, affidavits of five ISP prisoners, copies of grievance materials, copies of letters he sent to public officials outside the prison, and portions of his medical records.

Stringer also submitted a copy of the Operational Policy regarding the delivery of healthcare at the Putnamville Correctional Facility ("PCF"), but the court struck that document from the record because it is irrelevant. (DE 92). In his response

6

he also makes arguments about events that occurred at the PCF. When it dealt with Stringer's motion for a preliminary injunction, the court addressed events that occurred at the PCF after Stringer's transfer to that facility because defendant Mitcheff was a statewide CMS official. But the court has now dismissed Stringer's injunctive relief claims as moot. (DE 85).

The only claims remaining before this Court are Stringer's damage claims. Because he was a prisoner when he filed his original and amended complaints, Stringer may not proceed on any claims that the court has not vetted pursuant to 28 U.S.C. § 1915A. Stringer may not raise a claim that he was denied adequate treatment at the PCF without filing a second amended complaint addressing those claims and receiving leave of court, pursuant to Section 1915A, to proceed on his new claims. Because he did not do so, Stringer may not, in this case, address any claim except his claim that the Defendants were deliberately indifferent to his groin hernia while he was at the ISP. Accordingly, in its analysis of the Defendants' summary judgment motion, this Court will not consider events that occurred after November 19, 2008, which is the date Stringer filed his amended complaint and is also the date upon which he was transferred from the ISP to the PCF.

CLAIMS AGAINST NURSE HOLLOWAY

In his amended complaint, Stringer alleges that Nurse Holloway "harassed and embarrassed Plaintiff while responding to Plaintiff's

7

health care requests at the prison hospital," (DE 2 at 4). There is, however, "a *de minimis* level of imposition with which the Constitution is not concerned," *Ingraham v. Wright*, 430 U.S. 651, 674 (1977), and verbal abuse and harassment that embarrasses inmates is not sufficient to state a claim under § 1983. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Oltarzewksi v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).

In his response to the Defendants' summary judgment motion, Stringer states that on May 23, 2008, "his scheduled doctor's appointment was cancelled due to a verbal outburst following a discussion with Nurse Nicole." (DE 88-1 ¶ 4). The parties agree that Nurse Holloway sent Stringer back to his housing unit on May 23, 2008, because of Stringer's "verbal outburst." According to the Defendants:

> On May 23, 2008, Nurse Holloway, R.N. examined Stringer in response to his requests for healthcare. Exhibit C, pp. 5-6. When Nurse Holloway tried to educate Stringer about his hernia, Stringer became angry and stated, "you're a f*cking nurse, not a doctor, so shut up. Dr. Myers isn't going to f*ck with my shit." *Id*. Nurse Hollow[ay] terminated the examination because of Stringer's behavior. *Id*.

DE 48 at 3.

Stringer's version of this event is slightly different. He admits that he had a verbal outburst directed at Nurse Holloway while she was trying to help him, though he denies "displaying rudeness, anger and profanity." (DE 88-1 ¶ 4). According to Stringer, he "simply informed Nurse Nicole that she was not the doctor and she got upset." (*Id*.). Even giving Stringer the

8

benefit of the inferences to which he is entitled, and assuming that he did not display "rudeness, anger and profanity," before Nurse Holloway sent him back to his housing unit, this incident still did not violate the Eighth Amendment's prohibition against cruel and unusual punishments.

Stringer does not allege, and the record before this Court does not suggest, that he suffered any actual harm from being sent back to his housing unit because of his verbal outburst. He does not allege that he was at the infirmary for an emergency and the medical records do not suggest that he required immediate attention from a doctor on May 23, 2008. Moreover, the record reflects that four days later, on May 27, 2008, Stringer saw the nursing staff again to follow-up on his hernia. (DE 49-3 at 7). Nurse Hubbard took his vital signs and referred him to Dr. Myers, who also examined him. (DE 49-2 ¶ 7). Because the hospital visit of May 23, 2008, was not for an emergency medical condition that required immediate treatment by a doctor, and because he suffered no actual harm from being sent back to his housing unit early because of his behavior, Stringer cannot meet the subjective prong of the *Farmer* test, and Nurse Holloway is entitled to summary judgment.

CLAIMS AGAINST DR. MYERS

Stringer prepared his amended complaint while he was at the Indiana State Prison, and it was received by this Court and filed on November 19, 2008. (DE 2). In his response to the Defendants'

9

motion for summary judgment Stringer states that "[o]n November 19, 2008, the Plaintiff was transferred to Putnamville Correctional Facility. Following his transfer, the Plaintiff was no longer under the care of Dr. Myers or Nurse Holloway." (DE 88-1 ¶ 35).

To determine whether a genuine issue of material fact exists as to whether Dr. Myers was deliberately indifferent to Stringer's hernia problem while he was at the ISP, this Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Accordingly, the Court will review the facts stated in Stringer's statement of material facts contained in his response to the Defendants' summary judgment motion to see if they could support a finding of deliberate indifference against Dr. Myers.

Stringer's claims against the Defendants arising before November 19, 2008, are contained in paragraphs 1 through 34 of his statement of material facts and are not in dispute. According to Stringer's statement of material facts, on May 28, 2008, he saw Dr. Myers for the first time on his hernia complaint. "Dr. Myers noted a hernia present in the left inguinal area, which he deemed tender and easily reducible . . . Dr. Myers wrote a request for a general surgery consultation for Stringer's hernia . . . [and] . . . also prescribed a hernia belt as treatment." (DE 88-1 ¶ 6).

Stringer states that Dr. Myers next saw him on June 26, 2008, and "submitted a second request for surgery consultation due to

Stringer's complaints of inordinate pain . . . Dr. Myers noted the complaint regarding pain as 'strictly subjective' . . . Dr. Myers noted that the hernia remained reducible, but that Stringer reported the hernia belt as non-beneficial."  (DE 88-1 ¶ 10) (emphasis omitted).  "On July 7, 2008, Dr. Myers ordered Vicodin for pain for Stringer."  (*Id.* ¶ 12).

Stringer next saw Dr. Myers on July 30, 2008, "during chronic-care and complained of severe pain. Dr. Myers prescribed a walking cane for 90 days to help with ambulation."  (DE 88-1 ¶ 17).  "On September 3, 2008, Dr. Myers renewed Stringer's Vicodin prescription."  (DE 88-1 ¶ 21).

Stringer states that "[o]n September 17, 2008, Dr. Myers wrote another request for surgery consultation approval," stating that he saw Stringer in chronic-care on September 12, 2008, and noted, "no question that hernia has enlarged, unclear if it's now FULLY reducible or not.; surgeon's opinion requested."  (DE 88-1 ¶ 22) (Emphasis omitted).  In response to this request, Dr. Mitcheff examined Stringer.  (DE 88-1 ¶ 23).

"On September 30, 2008, Plaintiff complained of extreme pain . . . due to his hernia. The attending nurse called Dr. Myers who then ordered pain medication. The nurse also administered a shot of Nubian."  (DE 88-1 ¶ 25).  On October 14, 2008, Stringer submitted another "request for healthcare regarding hernia pain.  Dr. Myers responded to the request on October 17, 2008, informing him to "*write downstate*" with his complaints,"  (DE 88-1 ¶ 30), and "[o]n

11

November 8, 2008, Dr. Myers renewed the Plaintiff's prescription for Vicodin." (DE 88-1 ¶ 34).

The parties' submissions establish that the facts stated by Stringer do not support a finding that Dr. Myers was deliberately indifferent to Stringer's serious medical needs. According to Stringer's version of the facts, Dr. Myers saw Stringer several times, examined him, treated him conservatively for his hernia, prescribed pain medication, and wrote surgery consults that were reviewed by Dr. Mitcheff.

That a doctor sees an inmate and treats him normally establishes lack of indifference to the inmate's medical problems. *See Estelle*, 429 U.S. at 107. "Under the Eighth Amendment, Forbes is not entitled to demand specific care. She is not entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). Though Stringer may not have liked or fully agreed with the care he received from Dr. Myers, at best, he only alleges a disagreement with medical professionals about his needs, and deliberate indifference cannot be established simply because he disagrees with his course of treatment and would have preferred surgery instead of a conservative treatment regime. *Johnson*, 433 F.3d. at 1013; *Perkins*, 312 F.3d at 875; *Dunnigan*, 165 F.3d at 592; *Goka*, 862 F.2d at 650. There are simply no facts in this record from which a reasonable fact-finder could conclude that Dr. Myers deliberately disregarded Stringer's hernia and refused him treatment or pain medication. Accordingly, Dr. Myers is entitled

to summary judgment on Stringer's Eighth Amendment claims.

CLAIMS AGAINST DR. MITCHEFF

Dr. Michael Mitcheff, is "the Regional Medical Director of Correctional Medical Services Inc., the company that provides medical care and staff to the Indiana Department of Corrections (sic)." (DE 49-4 ¶ 4). Dr. Mitcheff states in his affidavit that he reviewed Dr. Myers's first two surgical consults and concluded that conservative care was appropriate for Stringer's condition because his hernia was easily reducible. (DE 49-4 ¶¶ 6 and 7). Dr. Mitcheff states that "[i]n mid-September 2008, I received a third surgical consultation request from Dr. Gerald Myers at the Indiana State Prison, in which he stated that it was unclear if Stringer's hernia was still fully reducible." (DE 49-4 ¶ 8). Dr. Mitcheff decided to examine Stringer himself to determine if the change in Stringer's condition suggested that surgery was now indicated. (*Id.*).

Dr. Mitcheff examined Stringer on October 2, 2008, at the Indiana State Prison. He states in his affidavit that:

> When I examined Stringer, he was not wearing his hernia belt which was prescribed to help contain his hernia. I found that Stringer's hernia was easily reducible and perhaps spontaneously reducible. The exam was difficult because of Stringer's threatening attitude and unwillingness to let me examine his inguinal ring. After examining Stringer, I prescribed a plan of care that included a hernia belt, stool softeners, and no lifting over 20 pounds. Stringer's hernia was easily and perhaps spontaneously reducible and was at low risk for strangulation. Surgical repair of Stringer's hernia was therefore not medically necessary. His condition could be

13

appropriately managed with conservative care.

DE 49-4 ¶ 9.

In his amended complaint, Stringer alleges that Dr. Mitcheff violated the Eighth Amendment's prohibition against cruel and unusual punishments because he "continuously denied all specialist referrals for the correction of Plaintiff's groin hernia." (DE 2 at 5). But this states a claim against Dr. Mitcheff only if "no minimally competent professional would have so responded under the circumstances." *Jackson*, 541 F.3d at 698.

Dr. Mitcheff states that he denied the first two requests for a surgery consultation and recommended continued conservative treatment because Dr. Myers stated in his reports that Stringer's hernia was reducible. Because the third request for surgery consult suggested a change for the worse in Stringer's condition, Dr. Mitcheff personally examined Stringer and determined for himself that Stringer's hernia could still be treated conservatively and did not require surgery. Stringer has not submitted any expert testimony contesting Dr. Mitcheff's conclusion that Stringer's hernia could be treated without surgery while he was at the ISP. Accordingly, there is no evidence from which a reasonable fact-finder could conclude that no minimally competent professional would have responded differently than Dr. Mitcheff did to the facts presented by Stringer's hernia.

STATE LAW CLAIMS

In his amended complaint, Stringer presents both federal claims and supplemental state law claims related to the defendants' actions regarding his hernia. Pursuant to 28 U.S.C. § 1367, unless provided otherwise by statute, federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy." But when a district court dismisses all federal claims, it has broad discretion to refuse to exercise jurisdiction over remaining supplemental state claims. *Szumny v. American General Finance Inc.*, 246 F.3d 1065, 1073 (7th Cir. 2001); *Kennedy v. Schoenberg, Fisher & Newman Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). Because this Court is granting summary judgment on Stringer's federal law claims, it declines to exercise supplemental jurisdiction in this action and will remand this complaint to the LaPorte Superior Court for consideration of the Plaintiff's state law claims.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendants' motion for summary judgment on Plaintiff's federal law claims (DE 47) and **REMANDS** the complaint to the LaPorte Superior Court for consideration of the Plaintiff's state law claims.

**DATED: March 30, 2010**         /S/RUDY LOZANO, Judge
                                  **United States District Court**